## SAMUEL BARKER'S and WIFE'S LESSEE, v. JOSEPH RICE [1] and JOHN PHILLIPS.

Court of Common Pleas. New Castle. December 18, 1798.

*Rodney's Notes.*

*Bayard, George Read* [for plaintiff]. *Ridgely, Rodney, Vandyke* [for defendants].

July 23, 1684. Patent from William Penn to John Carr and John Smith for four hundred acres.

November 14, 1689. Deed from Carr and Smith to William Ball. Consideration £26 for the land in the above patent.

January 30, 1709. Will of William Ball, devise to [——].[2]

October 30, 1720. Deed of partition between G. Ball and Jeremiah Ball, devisees as above.

July 10, 1734. Will of Jeremiah Ball, devise to William Ball one moiety to the west, the other to [——].[3]

Richard Mahan, surveyor, sworn. The stone at letter A, the beginning boundary. As shown by the parties, the patent contains eight hundred acres, Jeremiah Ball's part 474. I believe John Phillips knew of this claim when he purchased. I drew the deed.

Joseph Ball, sworn. 61 or 62 years of age. Have always lived close by these lands. William Ball lived where Burns does now. Jeremiah lived with him till he went to Thomas Reece's when I was about eighteen. Was supposed to be insane from a stroke of his master on his head, was confined at his brother's. He died in 1776 or 1777. William moved to Philadelphia and died

---

[1] In the evidence and the argument this name is spelled "Reece."

[2] Blank in manuscript. "G. Ball and Jeremiah Ball" appears to have been intended.

[3] Blank in manuscript.

before him. I have known the boundary at A twenty or thirty years. The boundaries shown to the surveyor I have known as long as I can remember as the patent boundaries. John Phillips has lived three years there, has built a mill. Old James Moore and several others lived on this land of Reece's, were a good while jangling about it. Jeremiah Ball the elder had two sons and four daughters. Thomas Reece married one. Charles Springer another. Thomas Reece claimed the possession of this land because he kept Jeremiah sometime.

Thomas Springer. I heard John Phillips say he knew the title and was not afraid of this claim of plaintiffs' in Autumn, 1795.

Deposition of John Knight that Jeremiah Ball was insane, etc.

Petition to Orphans' Court, 1744, by one of the executors for a maintenance to be allowed Jeremiah Ball a lunatic.

Several other depositions to same effect.

*Rodney* opened the defendants' case by stating they claimed under the will of Jeremiah Ball and deed from his son, Jeremiah.

March 15, 1746. Release from William to Jeremiah Ball.

September 12, 1748. Deed Jeremiah Ball to Thomas Reece (witnessed by Sheely and Ogle) in consideration of five shillings and keeping clothing etc. said Jeremiah Ball.

1790. Order of Orphans' Court to divide the lands of T. Reece, returned would not divide.

Allotted to Joseph Reece, eldest son, £400.

February 2, 1796. Deed from Joseph Reece to John Phillips.

February 2, 1796. Deed from Robert Crawford to John Phillips.

George Woolaston, sworn. 78 years of age. I knew Jeremiah Ball the elder. Elizabeth was the eldest, she married Thomas Reece, etc. Thomas Reece was in possession of this land of Jeremiah Ball's about 25 years before his death, he died (in the year 1768, says Joseph Reece) twenty years ago or before the war. I never saw Jeremiah. I heard he was crazy etc. It was said he made the deed for his life to T. Reece for his maintenance.

Deposition of John Hamilton, that Jeremiah Ball was sane.

Deposition of Solomon Hersey that he believes Jeremiah was in his reason.

William McMehen, sworn. Above forty years ago Thomas Reece ousted one Lowber from these lands. Reece died before the Revolution.

Robert Johnson. In the year 1761 Thomas Reece was in possession.

Mary Reece, sworn. Not examined, being interested; sworn on the *voir dire.*

Joseph Phillips. 52 years of age. I knew Thomas Reece in 1767. Was in possession and so continued till 1773, 1774, or 1775 when he died.

Stroud. The mill and other improvements made by John Phillips I suppose cost £1400 or £1500.

Verdict. Objection to record of Court being read in evidence. Court were of opinion there was no privity between the parties therefore verdict inadmissible.

*G. Read* opens etc. for plaintiff. We show you a good title from 1684 down to 1734 to Jeremiah Ball, under whom we claim, to wit, one-sixth part of patent which fell to Jeremiah (an undivided). First, one point in this cause, what is the nature of the estate we took under the will of Jeremiah the elder? Second, whether Jeremiah, the younger, was not incapable of conveying his lands by reason of his insanity. Though it is not necessary the testator should make use of technical expressions in his will as "heirs and assigns forever," yet he must use other words so as to show his intentions were to pass the fee simple, and from words are you to discover his intention. 1 Cro. 330, *Jenkins and Marshal,* the lands do not pass, being coupled with goods. 3 Cro. 157, *Ansley and Chapman.* 2 Eq.Cas.Abr. 311, I devise all my lands to my second son, yet considered estate for life. 2 Atk. 341, *Merson and Blackmore,* as to all my worldly estate I intend to settle etc., I give all my lands, messuages and goods whatsoever, determined to be life estate. Cowp. 235, 240, *Row v. Blacket,* Lord Mansfield, it is clear that a fee does not pass, [there] being no words of limitation. In order to make a devise of lands without words of limitation, the intention must be free and clear; if doubtful, it is only an estate for life. Cowp. 660, *Denn on the demise of Gaskin v. Gaskin,* as to all my worldly estate etc., Lord Mansfield, words of limitation are necessary in wills, yet not technical, "Estate in fee simple" will do, or words tantamount. Doug. 759, *Right v. Sidebotham,* "all my estate or interest" or "absolutely" will create a fee, but all my lands will not do; in this case, in the preamble or introductory clause, "dispose of all" etc. is stronger than the case before us. Secondly, whether Jeremiah the younger was capable of conveying his estate.

*Vandyke* for defendants. On our part we show you a title down to Jeremiah, who devised to Jeremiah (and William), who

conveyed to us in 1748, from which time until his death he had the possession and since his children until 1790, when the lands were allotted to Joseph, the eldest son, who conveyed a part to John Phillips, who has placed on his part buildings to a considerable value. Introductory part of will very strong. 2 Burr. 1112, Wilmot, the intention of the testator is the pole star to the construction of wills, if not inconsistent with the rules of law, and that by the will or devise itself without looking into other cases. Cowp. 307, *Hogan etc. v. Rowland Jackson,* doctrine of construction of wills fully explained in this case by Lord Mansfield. Jeremiah Ball declares his intention to settle the whole of his worldly substance. Cowp. 355, in this case, the word heirs or interest not used and yet deemed sufficient; if the court can lay hold of words as "all my estate," or expressions from the clause or the whole will taken together, they will be sufficient to take the devise out of the general rule. Second objection. Co.Litt. 251, if tenant for life attempts to alien in fee, reversioner or remainderman may claim and enter; so if Jeremiah had but a life estate, the right of the reversioner did accrue at the time of the release in 1746. If so, forty-eight years have expired, and they have been out of possession ever since. 1742, [1] Body Laws 195 says every person shall enter or sue within twenty years after their right of entry accrues. 1 Str. 609, twenty years peaceable and quiet possession may either make or defend a title. 1 Burr. 119, twenty years adverse possession is a positive title etc. Cowp. 215, Statute [of] Limitation operates a positive bar. 6 Term 554, 555, Lord Mansfield said he would not suffer a man to recover where he stood by and saw defendant build.

*Rodney* for defendants. If the plaintiffs have a title, I think I can show you they are barred. Co. Litt. [251], showing a title out of the Proprietary and twenty years possession an absolute bar to an ejectment; we have had forty-eight years. Cowp. 110, left to jury to presume a grant in case of one hundred years possession, though the principle of law there is [that] no limitation runs against the king. 2 Bl.Comm. 381, a devise to be favorably expounded; a fee may be created without words of inheritance, and tail without words of procreation. It is said Jeremiah, the younger, was a lunatic when he conveyed, and that was forty-eight years ago, and this is the first time we have heard of it. He was not lunatic when his father devised to him. Both the witnesses to the deed prove Jeremiah to be sane at time of executing the deed. 3 Bac.Abr. 89, if testator has lucid intervals and he is not proved insane at time of making the will, it shall be presumed he made it in lucid interval.

*Ridgely* for defendants. The jury are to look for testator's intention. Did not Jeremiah, Senior, intend to dispose of all his property "and desire it shall be received etc."? The case in Cro. 330 only a naked devise. [Also] 2 Atk., where a gross sum is to be paid out of the lands it gives a fee; these words "worldly goods" may mean only personal, not so strong as "all my worldly substance whatsoever." In Cowp. 355, Lord Mansfield in the case from Ireland, "all my worldly substance" means or includes everything and will carry a fee. 2 Bl.Comm. 297. Secondly, if this was an estate in fee yet, say the counsel, Jeremiah Ball was incapable of making a deed by reason of his insanity. This deed was recorded and notorious, and it is proved T. Reece maintained him nearly thirty years according to the confession in the deed. Also say they claim according to the strict rules of law, without regard to intention of Jeremiah, Sr., etc. As to John Phillip, he had no notice, has expended £1500, and Lord Mansfield, in 6 Term, declares he would not permit plaintiff in ejectment to recover in such case. No act of the court can determine a man insane; it must be by a sheriff and jury of twelve men. Petition of John Woolaston to Orphans' Court no application. After counsel for defendant had done, motion to admit a witness to prove the sanity of Jeremiah, Jr.

*Bayard.* Springer proves he told Phillips of the dispute, Mahon also. We claim under Jeremiah, Sr., as his heirs, he having given his land only for life. We do not claim all those lands, only one-sixth undivided part. If we get a verdict, the jury to divide will consider the improvements etc. I state that twenty years is not the limitations: four years, one month, twelve days [are] to be added. [The Statute] does not run against infants, *non compos,* beyond sea, *feme covert;* and Act does not run till right of action accrues. Jeremiah's possession was ours; if he had not a right to convey, if it was good or bad, we could not sue till 1776, which brings their possession to near sixteen years. They say an alienation is a forfeiture and cite Co.Litt. 251, which is to be understood where a greater estate is conveyed, to the prejudice of remainderman, to destroy his right of entry. This is only a release of his estate, whatever it may be. The Act of Assembly does not apply nor operate as a feoffment; this a deed poll. The jury to decide as to insanity, not the court. The words in introductory clause do not relate to the devise more to the sons than the daughters.

*Vandyke.* We last evening endeavored to show alienation was a forfeiture. [1] Body Laws 189, deeds [of] bargain and sale to have same effect here as feoffments in England.

*G. Read,* in conclusion, most earnestly solicits the attention of the court and jury on the two points in this cause: first, as to the construction of the will and the operation of the alienation; second, the insanity of Jeremiah Ball. Cowp. 356, Lord Mansfield, the intent connected with the devise not sufficient to pass a fee without other circumstances to manifest the intention. Phillips is [too] much commiserated; he had notice, and building did not make title. I shall now consider the nature of this deed, supposing the grantor sane, "release all such right, title, interest, and demand whatsoever," therefore if his estate was a life estate, this release conveys that estate and never did or can pass a greater, therefore no forfeiture.

JOHNS, J. This cause has been so fully and ably argued before you, the Court [rules] as to the law. First, as to the construction of [the] will, we are of opinion the devise in question does not pass a fee, but only a life estate. Second, whether the conveyance from Jeremiah Ball, Jr., to Thomas Rice (if he was sane) is such as the Act of Assembly makes a good conveyance in fee, it is to have the operation in England of a feoffment. Whether deed is such as the Act contemplates, we leave with you to decide. If it does operate a forfeiture, the Statute [of] Limitation begins in 1748, if not it will begin in 1776.

Verdict for defendants.